UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 3:18-cr-31-RLY-MPB-01 |
| ) | |
| JOHN P. HONNIGFORD, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

COMES NOW the United States of America, by Josh J. Minkler, United States Attorney for the Southern District of Indiana, and Todd S. Shellenbarger, Assistant United States Attorney, and respectfully submits the following memorandum for consideration by the Court in deciding the appropriate sentence in this matter.

**I.      Procedural History**

Defendant Honnigford was originally charged by complaint on May 19, 2017 with one count of possession of sexually explicit material involving minors and one count of receipt of sexually explicit material involving minors in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(a)(2).  (Document 1) The defendant was arrested on the complaint warrant on May 22, 2017 and has remained on pretrial supervision since his arrest.  On May 24, 2018, a one count Indictment was filed charging the defendant with possession of sexually explicit material involving minors in violation of 18 U.S.C. § 2252(a)(4)(B).  (Document 26)  On August 26, 2019 the defendant elected to plead guilty to the charge contained in the Indictment pursuant to a

[1]

plea agreement. (Document 46) Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the plea agreement leaves sentencing to the discretion of the Court. (Document 46)

A change of plea hearing was held on September 30, 2019. (Document 49) The Sentencing hearing is set to commence on January 15, 2020. (Document 49)

## II. Statement of Facts

### A. The BitTorrent File Sharing Network

The BitTorrent network is a popular and publically available peer-to-peer (P2P) file-sharing network. Computers that are part of this network are referred to as peers. A peer can simultaneously provide files to some peers while downloading files from other peers. The BitTorrent network can be accessed by computers running P2P software programs like BitTorrent, µTorrent, Vuze, and many others. These programs are publically available for free and can be downloaded using the Internet. These BitTorrent P2P software programs share common protocols for network access and file sharing with some variation between software versions. During the installation of typical BitTorrent P2P programs, various settings are established which configure the host computer to share files. Depending upon the BitTorrent software used, a user may have the ability to reconfigure some of the settings during installation or after the installation has been completed. Typically, a setting establishes the location for one or more directories or folders that make files available to other BitTorrent network users for downloading.

Law enforcement investigators have created BitTorrent network client programs that obtain information about peers sharing digital files of known child pornography (based on the info hash SHA-1 hash value, a unique measurement of the size and distinct characteristics of a

file), which then allows the downloading of a file from a single IP address (as opposed to obtaining the file from multiple peers on the network).  This procedure allows for the detection and investigation of those computers involved in sharing digital files of known child pornography on the BitTorrent network.   During the query and/or downloading process from a remote BitTorrent network peer, certain information may be exchanged between the investigator's software program and the remote peer they are querying and/or downloading a file from.  This information includes:  1) the remote peer/client's IP address; 2) a confirmation from the remote peer/client that they have pieces of the file(s) being requested, in whole or in part, and that the pieces of the file(s) are being reported as shared from the remote peer/client program; and 3) the remote peer/client program and version.  The investigator has the ability to log this information.

### B. On Line Investigation

On Friday, March 24, 2017, between approximately 12:43 a.m. (Central Standard Time) and 1:15 a.m. (Central Standard Time) a task force officer (TFO) assigned to the Evansville Indiana office of the Federal Bureau of Investigation (FBI) was running BitTorrent software and was connected to the Internet in an undercover capacity conducting an investigation on the BitTorrent Peer-to-Peer (P2P) file-sharing network.  A connection was made between the TFO's investigative computer and a computer device running BitTorrent software with an assigned IP address of XXX73f:d198.  Downloads of 188 files were successfully made from the computer device assigned IP address XXX73f:d198. The device using IP address XXX73f:d198 was the only IP address that shared the contents for the files downloaded, and as such, the files were downloaded directly from this IP address. Two of the files downloaded depicted a child under

the age of eighteen (18) years old, engaged in sexual acts and/or poses, and fall within the definition of sexually explicit conduct involving minors and child pornography set forth in 18 U.S.C. § 2256. The following files were reviewed by the TFO and can be described as follows:

>**File Name:**  gu-012-025.jpg
>**Description:**  This image shows a prepubescent female's uncovered genital area.

>**File Name:**  gu-012-037.jpg
>**Description:**  This image shows a close up view of a prepubescent female's uncovered genital area with decorative fruit placed on her legs and she is holding a flower in each hand with the flowers resting on her legs next to her genital area.

During the downloading of the files, the TFO's law enforcement investigative software generated logs which detailed the communication connections with the user of IP address XXX73f:d198.  In addition, it generated a report of the SHA1 hash value of the downloaded files.  The files that were downloaded were single source downloads, meaning the files came exclusively and wholly from the single suspect computer and not a group of computers possessing the same file.

A check of publicly available records maintained by an organization known as the MaxMind determined that the aforementioned IP address was assigned to the internet service provider Wide Open West.  A subpoena was obtained in order to identify the subscriber for the IP address on or about April 3, 2017.  On or about April 4, 2017, Wide Open West responded to the subpoena, identifying the following subscriber:

>**Name:**  Jody Honnigford
>
>**Address:**  Lant Circle, Evansville, Indiana 47714
>
>**Account Status**: Active

On April 4, 2017, the TFO conducted site surveillance at the Lant Circle address in

Evansville, Indiana. The TFO checked for any unsecured wireless access points near the Lant Circle address. There were two secured wireless access points that were associated with network names that appeared to be consistent with service provided by Wide Open West. No unsecured wireless access points were observed. On April 20, 2017, the Vanderburgh County Assessor's website listed the owners of the Lant Circle address in Evansville, Indiana as John and Jody Honnigford.

Separately, on March 24, 2017, another FBI TFO also downloaded files from the same IP address that he later reviewed and determined contained depictions of sexually explicit conduct involving minors. This TFO is an investigator based in Indianapolis, Indiana, who also investigates child exploitation offenses through on-line evidence collection similar to the Evansville TFO's investigations. A subpoena was provided to Wide Open West based on the Indianapolis TFO's investigative work and the results also confirmed that the subscriber assigned the IP address on the date and time of the downloads that the Indianapolis TFO made was Jody Honnigford with an address on Lant Circle in Evansville, Indiana.

### C. The Search and Statement of the Defendant

On May 16, 2017, a search and seizure warrant was signed by Magistrate Judge Matthew P. Brookman of the United States District Court for the Southern District of Indiana for the Honnigford residence. The warrant was executed at Honnigford's residence on May 17, 2017 by the lead TFO, FBI agents, and other FBI task force officers.

The defendant, John Honnigford, was home at the time the search warrant was executed. Jody Honnigford was also present at the residence at the time of the search and was identified as the defendant's wife. The defendant was advised of the reason for the search warrant and

willingly spoke with the TFO about the purpose of the search.  As the TFO started to discuss the purpose of the search with him, the defendant interjected telling the TFO that he did not need to beat around the bush and that he was sure he knew what the investigation was about.  During the discussion that followed, the defendant generally told the TFO that he had a problem, that he had unsuccessfully sought help in the past, and that he needed to get help.  The TFO audio recorded his initial encounter with the defendant.  A transcript of the recording is attached to this Memorandum and marked as **Exhibit A**.

The defendant told the TFO that the primary computer he used was located in a room described as a home office.  Honnigford directed the TFO to this room.  Honnigford told the TFO that he had BitTorrent software on his primary computer.  There were several external hard drives in the office where the primary computer was located.  Honnigford told the TFO that he used the hard drives to store different types of data files.  Honnigford pointed out one specific hard drive that he described as having the things the TFO would be interested in saved on it.  This external hard drive is a Toshiba that has 1.5 TB capacity bearing a serial number ending in the digits 0TTV2.  Honnigford confirmed that this hard drive would have LS model image files saved on it and that the TFO would probably find images depicting minors engaged in sex acts on this hard drive.  The LS model series of images are commonly collected by persons with a sexual interest in minors.  The LS model images are sets of images depicting minor females in sexually explicit poses that are commonly found in the collections of persons using file sharing software to download, view, and save sexually explicit material involving minors.

## D. The Examination of the Defendant's Electronic Devices

A complete forensic exam of the primary computer used by the defendant, an Alienware desktop computer tower, and the Toshiba 1.5 TB capacity external hard drive was conducted after the seizure of the devices. The hard drive had a well-organized file structure. The TFO found many file folders on the hard drive that contain depictions of minors engaged in sex acts and minors depicted in sexually explicit poses including depictions of the genital and pubic area of minors. The hard drive contained large sets of images involving the LS model series. The file structure divided individual LS models into separate files and saved all images associated with a specific model in the same file folder. The TFO successfully downloaded portions of approximately five of these same sets from one or more BitTorrent sharing folders on Honnigford's computer system during his March 24, 2017 online investigation described above. The file creation dates on the hard drive show that Honnigford saved these five LS model sets to his external hard drive on April 3, 2017 after downloading the files using BitTorrent beginning on or about March 24, 2017. A selection of the files found on the external hard drive are named in the indictment in separate alphabetical paragraphs. The forensic exam of the primary computer and the Toshiba 1.5 TB capacity external hard drive resulted in the following findings about the defendant's collection:

**Total Numbers**

Images = 10,178 +

Videos = 72

**Relevant image content**

Number of bondage images = 11

[7]

Age range = toddler to preteen

The computer hardware components, including an Alienware desktop computer tower and the external hard drive named in the indictment and software components, including a Windows operating system, used by Honnigford in the commission of the offense were manufactured and assembled outside of Indiana.

### III. The 18 U.S.C. § 3553(a) Factors Weigh in Favor of a Sentence within the Guideline Range as Properly Calculated by the Probation Department

The factors set forth in Section 3553(a) support a term of imprisonment within the Guideline range.

#### A. The nature and circumstances of the offense

The nature and circumstances of the offense are set forth in Section II above. Honnigford's collection of child pornography included still images and videos of a large number of sexually exploited minors. The Seventh Circuit has recognized as important and legitimate a district court's consideration of the lasting harm to victims linked to the production of child pornography, particularly when images of the children are distributed to others over the internet. *United States v. Klug*, 670 F.3d 797, 800-01 (7th Cir. 2012). A sentence below the properly calculated Guideline range would not recognize the harm suffered by the victims of the sexual exploitation found in Honnigford's collection of downloaded child pornography images and videos. Honnigford's collection included sadistic images and images depicting prepubescent minors and minors under the age of twelve years old.

#### B. The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment

The production, distribution, collection, and possession of child pornography is a serious

[8]

offense that causes grave harm to the children depicted in the images. The images and videos possessed by Honnigford depict minors subjected to sexual abuse by adults and depictions of minors engaged in sexual intercourse, oral sex, anal sex, object penetration, bondage, and masturbation. The harm to children depicted in child pornography was recognized years ago by the United States Supreme Court in *New York v. Ferber*, 458 U.S. 747, 758 (1982). In *Ferber*, the Supreme Court noted that, in the judgment of state and federal legislators, as well as authors of relevant literature, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Ferber*, 458 U.S. at 758 (citations omitted). The *Ferber* court also observed that the "[pornographic] materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *Id.* at 759 (citation omitted). Furthermore, the court stated:

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt [the victim] in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography… It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions.

*Id* at 759 & n. 10 (citations omitted).  *See also Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) (reaffirming Ferber in case involving possession of child pornography).

In 2002, the United States Supreme Court again acknowledged the harm to victims depicted in child pornography and observed that a new harm is caused each time the images are shared with someone different. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002). In *Free Speech Coalition*, the court noted that "as a permanent record of a child's abuse,

[9]

the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being." *Id* at 249. Moreover, in rejecting defendants' claims that the "mere" receipt or possession of child pornography is a victimless crime, courts have noted at least three specific harms inflicted on the children depicted in the pornographic images:

> First, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. The consumer who "merely" or "passively" receives or possesses child pornography directly contributes to this continuing victimization.
>
> Second, the mere existence of child pornography represents an invasion of the privacy of the child depicted. Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent. The recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.
>
> Third, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials…[T]here is no sense in distinguishing, as [Defendant] has done, between the producers and the consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.

*United States v. Norris*, 159 F.3d 926, 929-30 (5th Cir. 1998). A sentence below the properly calculated Guideline range would not reflect the seriousness of the offenses, promote respect for the law, and provide just punishment in the instant case involving many child exploitation

[10]

victims depicted in the collection of child pornography downloaded, carefully organized, and saved by the defendant.

### C. The need for the sentence imposed to protect the public against further crimes of the defendant and to deter the defendant

Honnigford poses a serious threat to commit further crimes upon release from imprisonment based on his strong sexual interest in minors and his demonstrated propensity to act on this interest through the collection, careful organization, and viewing of child pornography.

Significant research findings, based on self-reported acts, show child pornography collectors indeed pose a risk of contact sexual exploitation to minors. An analysis of several studies, all of which include self-reported data, indicated that approximately 55% of child pornography offenders admitted to previous crimes. Michael Seto et al., *Contact Sex Offending by Men With Online Sexual Offenses*, 23 SEXUAL ABUSE 124 (2011) (meta-analysis of 24 international studies, which found that approximately one in eight online offenders, the vast majority of whom were child pornography offenders had an officially known contact sex offense history, but estimating that a much higher percentage, approximately one in two, in fact had committed prior contact sexual offenses based on clinical self-report data). Moreover, in a study of 155 federal child pornography offenders in the United States who participated in the residential sex offender treatment program at FCI Butner from 2002-2005 found that official records, including the offenders presentence reports in their child pornography cases, revealed that 26% had previously committed a contact sex offense, yet finding that "self-reports" of the offenders in therapy revealed that 85% had committed prior hands on sex offenses. *See* Michael L. Bourke & Andres E. Hernandez, *The Butner Study Redux: A Report on the Incidence of Hands-On Child

*Victimization by Child Pornography Offenders*, 24 J. FAM. VIOLENCE 183 (2009).

Although some studies put the percentage lower than 50%, most of those involve only officially reported or prosecuted offenses. More reliable data comes from studies involving offenders' self-reports of criminal sexual conduct. As the Sentencing Commission noted in its recent study on child pornography sentencing "the much higher percentage of prior contact sex offending found by the "self-report" studies is in large part attributable to the fact that many of the self-reported prior child sex offenses were not captured by official reports. Studies show that only an "estimated 1 in 20 cases of child sexual abuse is reported or identified and that an arrest was made in only 29% of reported juvenile sexual assaults." This research demonstrates that a very large percentage of child sex abuse is unreported. As such, regardless of whether one relies on official reports, self-reports, or a combination, "[t]he key point, that some child pornography offenders have committed officially undetected contact offenses[,] is not controversial.'" U.S. SENT'G COMM'N, 2012 REPORT TO THE CONGRESS: FEDERAL CHILD PORNOGRAPHY OFFENSES, at 173-74 (Dec. 2012).

  While the defendant is 47 years old, this Court cannot be assured that Honnigford will no longer pose a threat to children in the public after his release. The Seventh Circuit has noted that at least one study suggests that a significant number of repeat sex offenders are over age fifty. *United States v. Beier*, 490 F.3d 572, 574-75 (7th Cir. 2007). The sentencing court is free to place the greatest weight on the need to protect the public against further crimes by the defendant when deciding on the appropriate sentence in a child exploitation case. *See United States v. Garthus*, 652 F.3d 715, 720-21 (7th Cir. 2011). Studies cited by the Seventh Circuit report recidivism among pedophilic sex offenders in general ranging between a low of 10 percent and a

high of 50 percent. *Id*. Honnigford also poses a unique threat based on his profession. As a medical doctor, Honnigford may have access to children in the private setting of a medical exam that would provide an opportunity for abuse and exploitation not available to most offenders. Given this risk, a sentence below the Guideline range would not reasonably protect the public from further crimes by the defendant and would not sufficiently deter the defendant in the future after his release from imprisonment.

### D. The Sentencing Range Set Forth in the Guidelines

The sentence recommended by the Guidelines is also a factor that the sentencing court is required to consider pursuant to 18 U.S.C. § 3553. 18 U.S.C. § 3553(a)(4)(A). Honnigford's final Guideline imprisonment range will likely be 63-78 months based on a criminal history category I, offense level 26, assuming this Court will elect not to impose a two-level enhancement under the Guidelines for use of a computer. See Document Number 50, PSR ¶ 64. The plea agreement allows for the government to argue in favor of a term of imprisonment up to the mid-point of this range, 70 months. See Document 46, Plea ¶ 9A. Pursuant to U.S.S.G. § 2G2.2(b)(7)(D), Honnigford's collection qualifies for a five level enhancement based on the collection containing more than 600 images. Child pornography videos are treated more severely under Guidelines and are counted as containing 75 images pursuant to U.S.S.G. § 2G2.2(b)(7)(D) and the Application Note for Subsection (b)(7). Honnigford's collection is comprised of approximately 10,178 child exploitation still images and 72 child exploitation videos, making it far larger than the 600 image ceiling found in U.S.S.G. § 2G2.2(b)(7)(D). Indeed, the application note on image number and video calculations contemplates an upward departure related to the number of minors depicted and the size and number and length of videos

stating, "If the number of images substantially underrepresents the number of minors depicted an upward departure may be warranted." U.S.S.G. § 2G2.2(b)(7)(D) and the Application Note for Subsection (b)(7). Multiplying the 72 videos in Honnigford's collection by 75 according to the Guideline formula yields a total of 5,400 images. Adding the 10,178 still images in the collection yields a grand total of 15,578. For these reasons, the Guideline collection size enhancement in Honnigford's case is not representative of the true size of the collection. At a minimum, without an upward departure, the vast size of Honnigford's collection merits a sentence at the mid-point of the Guideline imprisonment range.

### E. The need to avoid unwarranted sentence disparities

After making an accurate Guideline calculation the sentencing court must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Ramirez-Mendoza*, 683 F.3d 771, 774 (7th Cir. 2012). Section 3553(a)(6) requires the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The sentence recommended by the Guidelines is also a factor that the sentencing court is required to consider pursuant to 18 U.S.C. § 3553. 18 U.S.C. § 3553(a)(4)(A). A sentence consistent with the Guidelines generally will avoid unwarranted disparities among defendants with similar records who have been found guilty of similar offenses. The sentence imposed by this Court in the *United States v. Michael W. Williams*, Cause Number 3:18-cr-032-RLY-MPB, illustrates this point. Williams was 55 years old when he was sentenced by this Court on February 4, 2019 and he had no significant criminal history. Like Honnigford, Williams received Guideline offense level increases for possession of material that depicted prepubescent minors and minors under the age of twelve years and material that

[14]

portrays sadistic or masochistic conduct or other depictions of violence. But, Williams' collection was much smaller than Honnigford's, totaling less than 150 images. Williams' final imprisonment Guideline range based on a criminal history category I, offense level 23, was 46-57 months and this Court imposed a sentence within that range of 46 months.

Likewise, the sentence imposed by this Court in the *United States v. William V. Russell*, Cause Number 3:15-cr-015-RLY, is illustrative. Russell was 50 years old when he was sentenced by this Court on November 13, 2019 and he had no significant criminal history. Russell's wife had serious medical problems and Russell provided support to his wife and his adult children who lived in his residence. Like Honnigford, Russell received Guideline offense level increases for possession of material that depicted prepubescent minors and minors under the age of twelve years and material that portrays sadistic or masochistic conduct or other depictions of violence. Like Honnigford, Russell's collection vastly surpassed the Guideline maximum enhancement ceiling of 600 images based on Russell's possession of approximately 843 child exploitation videos. Russell's final imprisonment Guideline range based on a criminal history category I, offense level 26, was 63-78 months. This Court imposed a sentence within that range of 63 months.

Honnigford's final Guideline imprisonment range will likely be 63-78 months based on a criminal history category I, offense level 26. See Document Number 50, PSR ¶ 64. This is the same as Russell's final Guideline imprisonment range referenced above. A sentence outside this Guideline range for Honnigford would result in a significant sentencing disparity between Honnigford and other similar offenders sentenced for child exploitation offenses by this Court, in this district, and throughout other United States courts.

[15]

## IV. Factors That Do Not Support a Sentence Outside the Guideline Range

### A. Family Impact

The defendant is the father of three minor children between the ages of 17 and 13. See Document Number 50, PSR ¶ 46-47. The defendant will likely argue that a sentence of imprisonment will have a negative impact on his family. There is nothing new or different about the defendant's case that is not also true for other defendants facing imprisonment who also have families. Carrying this argument to its logical extension, how would it apply in other cases? Are other defendants in child pornography cases more culpable because they are unmarried or have no dependent children? The government does not downplay the importance of family ties or the defendant's devotion to his family. Rather, the government simply points out that this alone cannot determine his sentence when so many come before this Court with similar circumstances and nevertheless receive prison sentences because their conduct merits such a sentence. It should be no different here.

Not only does this argument lack fairness, it also lacks legal support. The Seventh Circuit recently rejected this same argument with more compelling circumstances in *United States v. Reed*. 859 F.3d 468 (7th Cir. 2017). There, Reed argued for a below-guidelines sentence of probation, "emphasizing that his wife (who has a disabling illness) and three children (one of whom also has a disability) depend on him for financial and other forms of support." *Id*. at 471. Instead, the district court sentenced him to a term of imprisonment of 64 months, the midpoint of the calculated guideline range. *Id*. The Seventh Circuit rejected Reed's appeal, noting the following:

> Sentencing Guidelines advise that a defendant's family ties and

> responsibilities are not ordinarily relevant in deciding whether to depart from the guideline range. *See* U.S.S.G. § 5H1.6. Every sentencing judge knows that a prison sentence will impose hardships on an offender's family. Every judge has heard heart-rending accounts of those hardships. The most common response is to acknowledge those hardships and to remind both the offender and his family that the hardship was caused by the offender's decision to commit the crimes for which he is being sentenced.

*Id*. at 473 (citing U.S.S.G. § 5H1.6). The Court of Appeals upheld the sentence, finding that the district court considered the family circumstances argument but "those considerations were outweighed by the seriousness and shamelessness of the offense and of defendant's conduct once caught . . . ." *Id*. at 474. The Court of Appeals remains consistent on this point even when reviewing the reasonableness of a sentence imposed for both the parents of minor children. *See United States v. Gary*, 613 F.3d 706 (7th Cir. 2010) (affirming terms of imprisonment of father and mother of two young children stating, "Most families suffer emotional and financial harm when a parent is imprisoned. Any experienced district judge has heard about those effects many times and must recognize that those effects are consequences of the parent's crime, not the sentenced imposed.").

In sum, the Court should put no more weight on defendant Honnigford's family situation than it does for any other defendant. The defendant's conduct, as a mass collector of child pornography, including depictions of sadistic abuse of children, merits a firm penalty consistent with the Guidelines. This should not be disregarded because of the defendant's family situation.

### B. The Defendant's Professional and Educational Achievements

The defendant has achieved a high degree of professional and educational success. At the time of the offense, the defendant was a licensed practicing medical doctor having completed undergraduate and doctoral degrees and a medical residency. See Document Number 50, PSR ¶

[17]

52-58. While these achievements are impressive, they are not relevant in determining whether a departure from the Guidelines sentencing range is warranted in a particular case. The Guidelines, reflecting the stated intention of Congress, discourage the consideration of education and vocational skills in formulating a sentence for an offender. *See* 28 U.S.C. § 994(e); U.S.S.G. § 5H1.2; U.S.S.G. Chapter 5, Part H, Introductory Commentary. Allowing education and vocational skills to substantially impact sentencing would result in an unfair two-tier sentencing format, with higher sentences for less educated, less professionally successful, disadvantaged, and impoverished defendants. *See United States v. Boucher*, 937 F.3d 702, 710-11 (6th Cir. 2019) (vacating and remanding case to district court for resentencing based in part on district court's unwarranted emphasis on defendant's status as a medical doctor); *United States v. Musgrave*, 761 F.3d 602, 608 (6th Cir. 2014); *United States v. Peppel*, 707 F.3d 627, 641 (6th Cir. 2013) ("[W]e do not believe criminals with privileged backgrounds are more entitled to leniency than those who have nothing left to lose.").

The sentencing court may not consider a defendant's socio-economic status in formulating a sentence under the Guidelines. 28 U.S.C. § 994(d); U.S.S.G. § 5H1.10. The Seventh Circuit has warned against the natural risk of showing improper sympathy in the sentencing of upper middle class offenders like Honnigford. *See United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999). Indeed, persons with above average knowledge and resources may be more culpable, to some degree, because they have available options to help them avoid the commission of offenses. *Id*. For example, in his initial contact with the lead investigator, Honnigford reported that he knew he had a problem related to his interest in sexually explicit material involving minors and that he had received counseling for the problem in the past

[18]

through a program associated with a medical provider in the Evansville Indiana area.  See **Exhibit A** attached.  As a medical professional, Honnigford had insight into his problem and access to counseling and treatment options to address his problem.  In this regard, Honnigford was better positioned to avoid criminal acts than others this Court has sentenced for similar offenses.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court impose a reasonable sentence in this case, within the Guideline formula range, and consistent with the 18 U.S.C. § 3553(a) sentencing factors.

                    Respectfully Submitted,

                    Josh J. Minkler
                    United States Attorney

                    By:  s/Todd S. Shellenbarger
                    Todd S. Shellenbarger
                    Assistant United States Attorney
                    Todd.Shellenbarger@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on **January 3, 2020,** the foregoing Government's Sentencing Memorandum was filed electronically under seal. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

Michael Keating
Attorney at Law

                              By:    s/ Todd S. Shellenbarger
                                      Todd S. Shellenbarger
                                      101 Martin Luther King BLVD, Federal Building
                                      Evansville, IN  47708 Phone:  (812) 465-6475
                                      Fax:  (812) 465-6444
                                      E-mail: Todd. Shellenbarger@usdoj.gov